FILED
2007 Feb-27  PM 02:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

HATTIE S. OLIVER,

     Plaintiff,

vs.                              Case No.: 3:07-CV-172

ATLAS VAN LINES, INC., and WHITE'S
MOVING SERVICE, INC.,

     Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the court is the defendants' motion to dismiss (doc. 3) filed with a supporting brief and evidentiary materials (doc. 3).  The plaintiff filed a response in opposition to the motion to dismiss (doc. 7) and supporting evidentiary materials (doc. 7) to which the defendants filed a reply (doc. 8).

### Factual Background

Atlas Van Lines, Inc., ("Atlas") is an interstate motor carrier providing moving services, and White's Moving Service, Inc., ("White's") is an agent of Atlas that provides moving services.  Compl. at ¶ 2, 3.  Hattie S. Oliver contacted White's in December 2004 to inquire about the cost of moving items from Georgia to Alabama.  Oliver spoke with employees of White's about the cost of shipping various sized loads.  None of the estimates provided exceeded $6,000, and Oliver elected to use White's based on these estimates.  Id. at ¶ 7.  On December 18, 2004, employees of White's, acting as agents of Atlas, packed Oliver's goods for transport from Georgia to Alabama.  On the same day, Oliver paid Atlas $6,259.40 and she believed this

1

amount to be payment in full based upon the estimates that were made to her by representatives of White's.  Id. at 8.

After the move, Oliver received a letter from Atlas, dated January 18, 2005, stating that a post-shipment audit had been conducted to determine the "correctness of her bill and payment."  Atlas demanded payment of an additional $3,168.91 plus potential interest and fees.  Id. at ¶ 9.  In another letter, dated February 21, 2005, Atlas informed Oliver that her account was "seriously past due" and demanded she pay an additional $31.69, for a total of $3,200.60.  Id. at ¶ 10.  When Oliver unpacked, she noticed that some of her goods had been damaged or had not been delivered.  Id. at ¶ 11.  She made repeated demands for the return of the missing property.  Some of the property was eventually returned, but some of her property was not returned.  Id. at ¶ 12.  Oliver sued Atlas and White's (collectively "the defendants") alleging fraudulent misrepresentation, suppression of material facts, negligent misrepresentation, negligence, conversion, breach of contract, and liability and damages under the Carmack Amendment (doc. 1).

## Analysis

The defendants argue that Counts I-VI should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because these claims are preempted by the Carmack Amendment to the Interstate Commerce Act.  Oliver concedes that Counts IV, V, and VI are preempted by the Carmack Amendment.  Therefore, the court finds that said claims are due to be **DISMISSED**.  However, Oliver argues that Counts I, II, and III are not preempted.  In Counts I, II, and III, Oliver asserts various

fraud claims alleging that the defendants provided her with an unreasonably low estimate in order to obtain her business, and that after loading her goods, the defendants inflated the cost of shipping.

The Carmack Amendment states in relevant part:

> A carrier providing transportation or service ... shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier ... [is] liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property.

49 U.S.C. § 14706. Prior to the enactment of the Carmack Amendment, liability of carriers for loss of, or damage to, interstate shipments was determined by common law or the law of the states. *Adams Express Co. v. Croninger*, 226 U.S. 491, 504, 33 S. Ct. 148, 152 (1913). "The Carmack Amendment creates a uniform rule for carrier liability when goods are shipped in interstate commerce." *Smith v. United Parcel Service*, 296 F.3d 1244, 1246 (11th Cir. 2002). The Supreme Court has explained the preemptive scope of the legislation:

> That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it.

*Adams Express*, 226 U.S. at 505-06.

The Eleventh Circuit Court of Appeals addressed preemption under the Carmack Amendment in *Smith v. United Parcel Service*, 296 F.3d 1244 (11th Cir. 2002). In *Smith*, the United Parcel Service ("UPS") refused to make regular

3

deliveries to Frank Smith's house after Smith had an altercation with a UPS driver during a delivery. Smith alleged that UPS would accept goods for delivery to his house but, rather than make deliveries, UPS would leave a notice at his house stating that the item could be picked up at the local UPS office. *Smith*, 296 F.3d at 1245. Smith and his wife sued UPS alleging fraud, negligence, willfulness, and outrage. *Id*. at 1246. In response to UPS's motion to dismiss, the Smiths argued that their claims were not preempted by the Carmack Amendment because the claims were "separate and distinct" from UPS's contract of carriage. *Id*. at 1246-47. The court found that the Smiths' state law claims "clearly relate to the delivery of goods, ... [and] all arise from UPS's failure to deliver their packages." *Id*. at 1247, 1249. The court further found that the Smiths alleged "no conduct separate and distinct from UPS's failure to transport and deliver packages." *Id*. at 1249. The court held "that the Carmack Amendment preempts all of the Smiths' claims because the claims arise from conduct involving UPS's transportation and delivery services." *Id*. at 1245.

The Eleventh Circuit Court of Appeals has not addressed the specific issue presented in this case--whether state law fraud claims arising out of an alleged "bait and switch" scheme are preempted by the Carmack Amendment. A Florida district court addressed this issue in *United Van Lines, Inc., v. Shooster*, 860 F. Supp. 826 (S.D. Fla. 1992). In *Shooster*, United Van Lines ("United") was hired to ship goods from Pennsylvania to Florida. When the goods arrived in Florida, United informed the shippers that the weight of the shipment was twice the weight that had been estimated and that the cost of the move would be greater than estimated. The

shippers refused to pay full price and United sued the shippers to enforce collection. The shippers asserted counterclaims against United alleging various fraud claims and a claim for assault and battery. *Shooster*, 860 F. Supp. at 827.  The shippers alleged that United used a "bait and switch" scheme to induce them to enter into a contract. The court held that the state law claims, including the fraud claims alleging the "bait and switch" scheme, were preempted by the Carmack Amendment.  *Id*. at 828.

Under the precedent set out in *Smith*, the court finds that Oliver's state law fraud claims are preempted by the Carmack amendment.  Like the claims asserted by the plaintiff in *Smith*, Oliver's fraud claims are not related to actual loss or damage to goods, but her fraud claims are related to the delivery of her goods.  Specifically, Oliver alleges that her goods were not delivered for the price that the defendants estimated.  The *Shooster* case also supports the proposition that Oliver's claims are preempted by the Carmack Amendment.  The court in *Shooster* held that, although the counterclaimants' claims were not based on allegations of loss or damage to property, that the claims were preempted.  Like the counterclaimants in *Shooster*, Oliver alleges that she was induced to hire the defendants because they engaged in fraudulent "bait and switch" schemes.  *See also Hall v. North American Van Lines*, No. 04-16182, 2007 WL 210383, at *1 (9th Cir. 2007) (holding that a "bait and switch" fraud claim alleged against an interstate carrier was preempted); *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 506 (1st Cir. 1997) (holding claims alleging negligence and misrepresentation occurring in the course of settling a claim for damages stemming from the move were preempted); *Gordon v. United Van Lines,*

*Inc.*, 130 F.3d 282, 289 (7ᵗʰ Cir. 1991) ("Although we consider it a close call, we conclude that claims relating to the making of the contract for the carriage are so closely related to the performance of the contract, and the measure of damages for such claims so likely to be the loss or damage to the goods, that they are also preempted by the Carmack Amendment."); and *American Eye Way, Inc. v. Roadway Package Sys., Inc.*, 875 F. Supp. 820, 822 (S.D. Fla. 1995) (holding that shippers' claims against carrier for negligence and misrepresentation, for allegedly making false representations during contract negotiations, were preempted).

## II: White's as an Agent for a Disclosed Principal (Atlas)

In the motion to dismiss, the defendants argue that White's should be dismissed as a defendant from this action because Atlas is the only party which can be held statutorily liable for damage to the interstate shipment.  The Interstate Commerce Act states:

> Carriers responsible for agents.--Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services (including accessorial or terminal services) and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier.

49 U.S.C. § 13907(a).  The defendants argue that, under this provision, Atlas is responsible for any acts or omissions of White's in transporting Oliver's household goods.  In the complaint, Oliver admits that White's is an agent of Atlas.  Compl. at ¶ 3.  Further, Oliver did not dispute that White's should be dismissed from the action in her response in opposition to the motion to dismiss.  Given that Oliver has alleged that White's is an agent of Atlas, the court finds that § 13907(a) precludes liability

on behalf of White's and that White's is due to be **DISMISSED** as a defendant to this action.  *See Marks v. Suddath Relocation Sys., Inc.*, 319 F. Supp. 2d 746, 752 (S.D. Tex. 2004) ("But if the [plaintiffs] are able to establish that some of their property was lost and damaged while in the possession of Suddath, as alleged in this action, United, as Suddath's disclosed principal, would be the entity liable as a matter of law under the relevant bill of lading."); *Werner v. Lawrence Transp. Sys., Inc.*, 52 F. Supp. 2d 567, 568-69 (E.D.N.C.1998) ("Not only does the statutory language impose liability on a motor carrier for the acts and omissions of the carrier's agent, but case law holds that the agent of a disclosed principal cannot be held liable pursuant to a duly issued bill of lading contract.").

In consideration of the foregoing, it is hereby **ORDERED** that the defendants' motion to dismiss is **GRANTED**, and that Counts I-VI are **DISMISSED** and defendant White's Moving Service, Inc., is **DISMISSED** as a party to this action.

**DONE** and **ORDERED** this the 27th day of February 2007.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE